## CANOVSKY v. BONHAGE

(February 17, 1930. Opinion and Decree.)

Rittenberg & Rittenberg, of New Orleans, attorneys for plaintiff, appellant.

Puneky & Barrios and Jas. J. Landry, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. M. Botkofsky was the owner of certain improved property bearing the municipal numbers 2910-12 Milan street in New Orleans.

Defendant, H. C. Bonhage, found the property attractive and thereupon made a written offer of $10,500 therefor to David Canovsky, a real estate agent, who is plaintiff in this suit.

The offer contained the following stipulation:

"Should I fail to comply with the terms or conditions of this offer after same is accepted, I obligate myself to pay on demand your commission on this sale, and any Attorney's fees and costs of Court that you may incur in enforcing collection of your claim."

Plaintiff alleges that through his efforts the owner's acceptance was obtained, but that Bonhage failed and refused to carry out his obligation to take and pay for the

property, and that hence, under the stipulation above quoted, he (Bonhage) has made himself liable for the agent's commission at 4 per cent. on $10,500, or $420, and for a reasonable attorney's fee, which is fixed in the petition at $100.

Defendant resists payment on two grounds: That the offer was not accepted, either by the owner or by his properly authorized agent; and that before the alleged acceptance was signed the offer had been withdrawn.

We find from the record that M. Botkofsky, the owner, was not in New Orleans when Bonhage signed the offer, and we gather that Canovsky thereupon took the offer to David Botkofsky, brother of the owner. David Botkofsky, knowing that his brother could be located on a train passing through Albany, N. Y., sent him a telegram reading as follows:

"New Orleans, August 27, 1928.
"Mr. Botkofsky:
"Have signed offer ten thousand five hundred Milan advise immediately. Dave."

In answer to this message M. Botkofsky telegraphed his brother as follows:

"August 27, 1928.
"Rex Hat Co. D. Botkofsky
"150 So. Rampart Street
"New Orleans, La.
"Get them to raise about two hundred advise them that I did not accept the offer If you want will wire from Nashville offer not accepted try to work them if you can If not accept the offer ten thousand five hundred as per your telegram.
"M. Botkofsky."

There is a dispute as to what occurred in New Orleans when this answer was received.

On behalf of Canovsky, it is contended that David Botkofsky, realizing that the offer of $10,500 was a very good one and that it might be lost if further negotiations were attempted, immediately signed the acceptance on behalf of his brother, without communicating the contents of the telegram either to Canovsky or to Bonhage. In fact, it is contended that, although Canovsky asked to see the telegram, the recipient thereof refused to allow him to do so.

Bonhage maintains that, before the acceptance was signed by David Botkofsky, Canovsky telephoned and said that the offer of $10,500 had been rejected, and that the owner would not take less than $10,750, whereupon he (Bonhage) not only refused to raise his offer, but instead, told Canovsky to withdraw his original proposition entirely.

The evidence on this disputed question of fact, in our opinion, does not preponderate either way. But we find it unnecessary to come to a conclusion on this point, because we feel that the acceptance, as signed by David Botkofsky, was not authorized by the owner unconditionally, and hence was not binding on him; and, if it was not binding on the owner, of course it could not be effective against Bonhage. Canovsky contends that the telegram of M. Botkofsky to his brother David gave David full discretion to act, and he points to that principle of law, which, in Corpus Juris, verbum "Agency," sec. 246, p. 612, is stated as follows:

"Where the agent has authority to exercise discretion his exercise thereof will bind the principal. * * *"

The legal principle contended for is unquestionably sound, but has no application here, because, as we read the telegram, it gave no discretion to the agent, but, on the contrary, contained detailed and specific instructions as to how to proceed. It is true that the agent was directed to accept the original offer, if, after carrying out the detailed instructions referred to, a larger one could not be obtained. The words, "Advise them that I did not accept the offer," do not indicate any intention to leave the matter to the discretion of the agent, nor does the concluding sentence, "If not accept the offer ten thousand five hundred as per your telegram," evidence a desire that the agent may decide for himself whether he will attempt to have the offer raised. He was given the right to accept the original offer, if and only if, as a result of carrying out the detailed instructions of his principal, that offer could not be increased. Apparently M. Botkofsky had confidence in his own ability as a trader, and he determined just what steps were necessary to obtain the increased price which he desired. He did not wire his brother to try to get more if he thought he could, but to do certain specific things, and only in the event of failure to accept the original offer.

There can be no doubt that a principal who gives specific instructions to an agent is not bound by the acts of the agent done in violation of or in disregard of those specific instructions.

Powers of attorney should be strictly construed, and the authority granted therein should not be extended beyond the clear intention of the principal as expressed in the document granting the authority. As is said in Corpus Juris, verbum "Agency," sec. 199, p. 556:

"* * * A power of attorney, being a formal instrument, must be strictly construed according to the natural import of its language, and the authority conferred is not to be extended beyond that which is given in express terms, or which is necessary and proper to carry into effect that which is expressly given. Powers of attorney are not subject to that liberal interpretation which is given to less formal instruments. * * *"

M. Botkofsky, had he not wished to carry out the agreement, could have refused to do so on the ground that he had authorized the execution thereof only on certain conditions, which conditions had not been complied with. In Corpus Juris, sec. 204, p. 562, verbum "Agency," we find the following:

"* * * As a general rule every person who undertakes to deal with an alleged agent is, by the mere fact of agency, put upon inquiry, and must discover at his peril that it is in its nature and extent sufficient to permit the agent to do the proposed act, and that its source can be traced to the will of the alleged principal. * * *"

In Chaffe vs. Stubbs et al., 37 La. Ann. 656, we find the following:

"However much it may be claimed as a legal proposition, that the acts of the agent bind the principal, this can only be truly said when the former acts within the scope of his mandate.

"Where the power is not exhibited at the time of the contract with the agent and does not form part of it, it is clear

that the acts of the latter cannot conclude his constituent, who at all times enjoys the privilege of showing by competent evidence, either that his instructions were not carried out or have been transgressed.

"Whoever deals with an agent is put on his guard by the very fact and does so at his risk. It is his right and duty to inquire into and ascertain the nature and extent of the powers of the agent and to determine whether the act or contract about to be consummated comes within the province of the agency and will or not bind the principal.

"If the power exhibited is sufficient, the principal will not be permitted to gainsay the acts of his representative, but if it is not, he is warranted in repudiating them."

While it is of no great importance, the record leaves us convinced that both M. Botkofsky and his brother David considered $10,500 a splendid price for the property, and, if they did so consider it a good price, the fact that no attempt was made to force the prospective purchaser, Bonhage, to accept title and pay therefor is significant of the fact that they realized that the contract was not binding.

If the owner was not bound, Canovsky is not entitled to his commission, because he has not produced an enforceable contract.

Under the authorities above cited, it was Canovsky's duty, before relying on the acceptance by the agent, to investigate the agent's authority. The authority was contained in the telegram, and an inspection of the telegram would have shown that the agent was not authorized. He should have insisted on seeing the telegram.

The trial judge dismissed the suit, and, as we think that he was correct, the judgment appealed from is affirmed.